IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JENNIE L. NOEL,

            Plaintiff,

     v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

            Defendant.

No. CV 06-609-MO

OPINION & ORDER


**MOSMAN, J.,**

Plaintiff Jennie Noel seeks review of the Commissioner's final decision denying her application for Supplemental Security Income ("SSI") on the basis that she is still able to perform work that exists in the national economy. For the reasons that follow, the Commissioner's decision is AFFIRMED.

## BACKGROUND

Ms. Noel applied for SSI on January 15, 2003, alleging disability due to tarsal tunnel syndrome of the left foot, heel spurs, borderline intellectual functioning, learning disorders, ADHD, and depression. Ms. Noel is 42 years old. She has a high school education with some college classes and a varied work history. Her daily activities include cooking, cleaning, reading, and taking public transportation. She also takes hour long walks, goes to church, does needlework and crocheting, and manages her own finances.

At the hearing before the administrative law judge ("ALJ"), Ms. Noel and a vocational expert ("VE") testified. Thereafter, the ALJ issued her decision in April 2005, finding Ms. Noel not disabled because she retains the residual functional capacity ("RFC") to work as a small

components assembler and a parking lot cashier.  The Appeals Counsel denied Ms. Noel's request for review.  This appeal followed.

## LEGAL STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996).  To meet this burden, a claimant must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The Commissioner engages in a sequential process encompassing between one and five steps to determine disability under the Social Security Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920(a).  At step one, the ALJ determines if the claimant is performing substantial gainful activity.  If she is, the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).  Here, the ALJ found Ms. Noel has not performed substantial gainful activity since filing for SSI.  This finding is not in dispute.

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement.  20 C.F.R. §§ 416.909; 416.920(4)(ii).  If the claimant does not have such a severe impairment, she is not disabled.  Here, the ALJ found Ms. Noel's "low average intellectual functioning and tarsal tunnel syndrome of the left foot exacerbated by obesity" are severe impairments in combination.  Tr. at 22.[1]  This finding is in dispute.

At step three, the ALJ determines if the severe impairment meets or equals a listed impairment in the regulations.  20 C.F.R. § 416.920(4)(iii).  If the impairment is determined to

---

[1]"Tr" refers to the "Transcript of Social Security Administrative Record" filed in this case.

PAGE 2 - OPINION & ORDER

equal a listed impairment, the claimant is disabled. The ALJ found Ms. Noel's impairments do not meet or equal a listing in this case. This finding is not in dispute.

If adjudication proceeds beyond step three, the ALJ must evaluate the medical and other relevant evidence and determine the claimant's RFC. 20 C.F.R. § 416.920(a)(4). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite her limitations. 20 C.F.R. § 416.920(e), Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (1996). Here, the ALJ assessed Ms. Noel's RFC as follows:

> I find the claimant retains the ability to lift and carry up to 10 pounds frequently and up to 25 pounds occasionally. She can stand and walk up to two hours of an eight-hour workday. She can sit up to six hours of an eight hour workday. She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes and scaffolds. She is able to perform simple, repetitive tasks. She has a greater ability in the non-verbal realm, rather than in the literary and communication skills.

Tr. at 29. This finding is in dispute.

At step four, the ALJ considers whether the claimant's RFC allows the claimant to perform "past relevant work." 20 C.F.R. § 416.920(a)(4)(iv), (f). If she can perform such work, the claimant is not disabled. Here, the ALJ found Ms. Noel is not capable of performing her past work. This finding is not in dispute.

Finally, step five addresses whether the claimant is able to do any other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 416.920(a)(4)(v), (g). Here, the burden is on the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Yuckert*, 482 U.S. at 141-42; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through VE testimony or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). Here, the ALJ found Ms. Noel has the RFC to work as a small components assembler or a parking lot cashier. Tr. at 30. This finding is in dispute.

The district court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## DISCUSSION

Ms. Noel argues the ALJ erred at step two by finding some of her impairments non-severe.  She also argues the ALJ's RFC assessment is incomplete as it does not contain all of the limitations indicated by the medical record and her own testimony.  Finally, she argues the ALJ erred at step five by identifying parking lot cashier as a job she can perform because it is classified as light work and exceeds her RFC for sedentary work.

A.)    Severity of Impairments

An impairment is "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  This step is intended to be a "de minimis screening device [used] to dispose of groundless claims."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).  In *Webb*, the Ninth Circuit held the ALJ erred in resolving the case at step two by finding the claimant had no severe impairments.  *Id.* at 687.  But the issue here is different.  The ALJ did find Ms. Noel's tarsal tunnel syndrome and low average intellectual functioning impairments are severe in combination.  Thus, the question is whether the ALJ erred in not finding *all* of Ms. Noel's impairments are severe.  Ultimately, it does not matter to the outcome that the ALJ did not find all of Ms. Noel's impairments severe.  Beyond satisfying the minimal threshold at step two, distinguishing between severe and non-severe impairments is important at step three because the ALJ must determine whether a claimant's *severe* impairments

meet or equal a listing.  20 C.F.R. § 416.920(a)(4)(iii).  But, Ms. Noel does not challenge the

ALJ's step three finding.  Further, while the ALJ concluded Ms. Noel's depression, learning

disability, and ADHD are non-severe, she explained these impairments "were considered along

with the severe impairments . . . in evaluating this case," Tr. at 22, and it is clear from her

decision that she did in fact consider all of Ms. Noel's impairments in assessing her RFC.  *See*

SSR 96-8p, 1996 WL 374184 at *5 ("the adjudicator must consider limitations and restrictions

imposed by all of an individual's impairments, even those that are not 'severe'").  From the

briefing, it appears Ms. Noel's real dispute is with the RFC assessment and not the step two

analysis.  Because I find the ALJ's decision at step two has no practical impact on the ultimate

outcome of this case, it is not addressed further.  *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir.

2006).

B.)     RFC Assessment

        As stated above, in assessing RFC, the ALJ must consider the entire record, including

"medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably

attributed to a medically determinable impairment."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880,

883 (9th Cir. 2006) (internal quotation marks and citation omitted).  Ms. Noel argues the ALJ's

RFC assessment is incomplete because it does not include all of the non-exertional limitations

identified by Dr. Gostnell, Dr. Oelheim, and Nurse Practitioner ("N.P.") Aasland.  She also

argues the ALJ erroneously found her testimony regarding the severity of her limitations non-

credible.

        1)     **Medical Evidence**

        Dr. Gostnell conducted a psychological evaluation of Ms. Noel in May 1995 and July

2000.  In 1995, after administering numerous neuropsychological tests, he reported Ms. Noel's

full performance I.Q. was 83, she had a Global Assessment of Functioning ("GAF") score of 65,

and her "intellectual functioning is in the low-average range."  Tr. at 155-56.  He also explained

Ms. Noel "is more effective at visual than at verbal learning and is also better able to concentrate

in the visual modality," and that she would "benefit from multi-modal learning opportunities–i.e., presentation of information which provides an opportunity to integrate across several modalities, thereby strengthening learning and retention." Tr. at 156. He indicated work as a receptionist would be appropriate "based on the relatively light intellectual and cognitive demand of such a position." Tr. at 156.

In 2000, Dr. Gostnell again determined Ms. Noel's full scale I.Q. was 83, but he found a GAF of 48. Tr. at 170-71. He also noted "a significant disparity between her verbal (borderline-defective) and nonverbal (average) abilities," and that her testing was consistent with attention deficit disorder. Tr. at 169. He explained the disparity does not evidence a "general intellectual restriction," but rather a "learning disability, in addition to difficulties she has with attentional control." Tr. at 170. Again, he indicated Ms. Noel's "most effective learning style emphasizes visual processing, i.e., demonstrations and diagrams, compared to the use of written material or verbal instructions." Tr. at 170. Vocationally, Dr. Gostnell indicated she needs "sedentary-to-light" work to accommodate her physical limitations and that her cognitive abilities are better suited to non-verbal positions, like "assembly, production, quality control," rather than secretarial or receptionist work that requires literacy and communication skills. Tr. at 170.

N.P. Aasland began treating Ms. Noel in December 2002. She diagnosed major depression and learning disability, assessed Ms. Noel's GAF at 60, and began proscribing medication to treat her depression. Tr. 265. In March 2003, N.P. Aasland further diagnosed ADHD and stated Ms. Noel has poor concentration, "would not be able to follow instructions unless she had constant reminders," and would require "close supervision . . . to work." Tr. at 188. Two months later, N.P. Aasland, along with Felicia Lauritsen, Ms. Noel's social worker, wrote to the Social Security Appeals Board advocating for a finding of disability. In particular, they argued Ms. Noel is unable to acquire new employment skills due to her learning disability and attention difficulties and that there are no nonverbal production jobs of the type identified by Dr. Gostnell that can be performed sitting down, as required by Ms. Noel's physical limitations.

Tr. at 184.

Dr. Oelheim conducted a psychological examination of Ms. Noel in June 2003.  He also concluded Ms. Noel's intellectual capacity is in the low-average range with a full scale I.Q. of 88. Tr. at 192.  Consistent with Dr. Gostnell, he noted Ms. Noel's non-verbal skills are stronger than her verbal skills.  Tr. at 192-93.  However, Dr. Oelheim also indicated Ms. Noel performed better overall in 2003 than she had in 2000, and in fact, performed "significantly higher" on the verbal tests.  Tr. at 195.  Indeed, he found the "testing results do not indicate the presence of learning disabilities in any qualifying area."  Tr. at 196.  As explanation for the improvement, Dr. Oelheim opined: "These changes in [Ms. Noel's] scores may in large part be due to her medications and her increased ability to concentrate and apply herself.  It may also be due to increased stability in [her] home life situation."  Tr. at 195.

Both Dr. Gostnell and Dr. Oelheim are examining physicians.  The ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995).  Where the opinion is contradicted, however, the ALJ need only have "specific and legitimate reasons that are supported by substantial evidence in the record."  *Id.* at 830-31.  Here, there is a conflict between Dr. Gostnell and Dr. Oelheim regarding whether Ms. Noel has a learning disability.  The ALJ resolved this conflict in favor of Dr. Oelheim because his examination is more recent and because Dr. Gostnell's more severe diagnoses were made before Ms. Noel began taking medication for her mental impairments.  Referencing Dr. Oelheim's opinion that the medications improved Ms. Noel's condition and Ms. Noel's own statement in summer 2003 that "she's able to focus better" with the medication, Tr. at 27, 235, the ALJ concluded Ms. Noel's condition has improved and she does not currently have a learning impairment.  The ALJ's decision is based on specific and legitimate reasons supported by substantial evidence in the record.  42 U.S.C. § 405(g).

Ms. Noel also argues the ALJ erred by not re-contacting and seeking an updated report

PAGE 7 - OPINION & ORDER

from Dr. Gostnell.  I disagree.  The Commissioner does have a duty to fully develop the record, including re-contacting medical sources where the record is ambiguous or otherwise inadequate to assess disability.  *Widmark v. Barnhart*, 454 F.3d 1063, 1068-69 (9th Cir. 2006); 20 C.F.R. § 416.912(e).  However, because Dr. Gostnell and Dr. Oelheim are both examining physicians and they both relied on substantially similar objective testing, there is no basis to conclude Dr. Oelheim is less qualified to assess Ms. Noel's condition thereby necessitating an additional opinion.  The ALJ has specific and legitimate reasons for giving more weight to Dr. Oelheim's opinion, and the record is not ambiguous or inadequate such that additional evidence is required before a decision can be made.

Finally, Ms. Noel argues the ALJ erred in not including Dr. Oelheim's complete findings in the RFC assessment.  In spite of noting her improvement with medication, Dr. Oelheim did state Ms. Noel is a visual learner and should be taught new skills with "visual models."  Tr. at 196.  He also found she may have difficulty retaining information to complete a specific task.  Tr. at 194.  The ALJ found Ms. Noel is limited to performing "simple, repetitive tasks[]" and noted she "has a greater ability in the non-verbal realm, rather than in the literary and communication skills."  Tr. at 29.  The VE testified that a person with this RFC and Ms. Noel's background could work as a small components assembler and a parking lot cashier.  The ALJ further asked the VE whether his assessment would change if "moderate limitations regarding detailed tasks" were added.  Tr. at 435.  The VE stated this additional limitation would reduce the number of jobs available by 25%, but would not completely eliminate the job categories identified.  Tr. at 435-36.  Ms. Noel's attorney also asked the VE on cross examination whether a concentration/distraction limitation that caused the person to make errors every couple of hours or work at a reduced rate of production would impact his testimony.  Tr. at 439-40, 442.  On this point, the VE testified such limitations would also result in a reduction in the number of jobs available, but again would not eliminate all available jobs.  The VE estimated repeated errors would reduce the number of jobs by 25%-75%, depending on the seriousness of the errors, and a

PAGE 8 - OPINION & ORDER

reduced production rate would reduce the number of jobs by 25%.

Ms. Noel argues this testimony shows the Commissioner failed to meet her burden at step five of proving Ms. Noel can perform jobs that exist in significant numbers in the economy. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  Taking the ALJ's additional hypothetical limitation first, I find Ms. Noel's argument unpersuasive.  Whether there are a "significant number of jobs" is a question of fact for the judicial officer.  *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986).  There is no a magic number.  Here, a 25% reduction would mean there remains 9,750 local / 900,000 national small components assembly jobs and 525 local / 64,500 national parking lot attendant jobs.[2]  This is a significant number of jobs.[3]  *See id.* (holding 3,750-4,250 jobs within the regional economy is a significant number); *Barker v. Sec. of Health & Human Servs.*, 882 F.2d 1474, 1478-79 (9th Cir. 1989) (holding 1266 jobs in regional economy is a "substantial number").

As to the additional hypothetical posed by Ms. Noel's attorney, I also find the ALJ did not err.  The only medical evidence suggesting Ms. Noel makes frequent errors is from Dr. Gostnell's 2000 assessment where he stated, "On the Test of Variables of Attention, which measures alertness and response efficiency on a twenty-minute vigilance task, Ms. [Noel's] omission and commission errors increased across the twenty-minute course of testing."  Tr. at 167.  There is no specific evidentiary support for counsel's assertion that Ms. Noel would make errors on the job every couple of hours.  In addition, to the extent Dr. Gostnell's statement supports counsel's assertion, as discussed above, the ALJ provided sufficient reasons for rejecting Dr. Gostnell's

---

[2]The VE testified that without any reduction, there are 13,000 local / 1.2 million national small components assembly jobs and 700 local / 86,000 national parking lot cashier jobs. Tr. at 434.

[3]Ms. Noel also argues the fact that her vocational counselor has been unable to find a position for her meeting her limitations is evidence that she is disabled at step five. Pl.'s Op. Br. at 15. The Ninth Circuit has held that it is not whether the claimant can actually obtain a job within her limitations that matters, but whether such jobs *exist* in substantial number in the economy. *Id.* Here, the Commissioner established a substantial number of jobs exist that Ms. Noel can perform through the VE's testimony. *Tackett*, 180 F.3d at 1101.

conclusions in favor of Dr. Oelheim.  Dr. Oelheim gave no indication Ms. Noel would have trouble making frequent errors performing simple, repetitive tasks.  Rather, in relation to verbal testing–Ms. Noel's weakest area–he found "she has a good attention span and is resistant to being distracted by outside noise."  Tr. at 193.  He also found that her "abilities in processing visual material without making errors are comparable with those of other adults her age."  Tr. at 194.

Ms. Noel also argues the ALJ erred in rejecting the limitations identified by N.P. Aasland, including the need for constant reminders and close supervision.  Nurse practitioners are not "acceptable medical sources" under the regulations.  20 C.F.R. § 416.913(d); SSR 06-03p, 2006 WL 2329939, *2 (2006).  Thus, the ALJ need only provide specific reasons that are germane to the witness before rejecting this evidence.  *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993)).  In a recent policy interpretation, the agency instructed "[t]he evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case.  Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case."  SSR 06-03p, 2006 WL 2329939, *5.

Here, the ALJ gave little weight to N.P. Aasland's opinion because she cited "little objective evidence in support of her opinion," whereas Dr. Gostnell and Dr. Oelheim relied on "extensive psychological testing and their expertise, rather than supposition."  Tr. at 29.  The ALJ also noted N.P. Aasland had only seen Ms. Noel on five occasions, demonstrating there was not a lengthy treatment relationship on which she was relying in forming her opinions.  Tr. at 29.  These are legitimate reasons for giving less weight to this evidence.  *See* SSR 06-03p, 2006 WL 2329939, *4 (listing factors properly considered in assessing opinion evidence).  Thus, I find the ALJ did not err in her treatment of this evidence.

2)    **Ms. Noel's Testimony**

"Credibility determinations are the province of the ALJ," *Fair v. Bowen*, 885 F.2d 597,

604 (9th Cir. 1989), and the ALJ may use "ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistencies in her testimony." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Where there is evidence of a medically determinable impairment that could reasonably give rise to the purported symptoms and there is no evidence of malingering, the ALJ must give clear and convincing reasons for rejecting the claimant's testimony as to the severity of her symptoms. *Robbins*, 466 F.3d at 883; *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).

Here, the ALJ found Ms. Noel "not fully credible" because she has a "history of not being fully compliant with treatment recommendations," her vocational rehabilitation and daily-living activities are inconsistent with her allegations, her testimony itself is inconsistent, and the medical evidence does not support the level of severity she asserts. Based on the record in this case, these are clear and convincing reasons for substantially rejecting Ms. Noel's testimony.

It is undisputed that Ms. Noel did not comply with many treatment recommendations. In December 2004, Dr. Myers reported she was "not following through with . . . recommendation for diet/exercise." Tr. at 383. Likewise, Ms. Noel reported not taking pain medication for her feet due to "possible stomach problems," Tr. at 163, and she declined her doctor's suggestion that she wear orthopedic shoes. Tr. at 235. The treatment notes indicate Ms. Noel "mainly wants SSI." Tr. at 235. She has also, on at least one occasion, voluntarily stopped taking the medication proscribed for her mental impairments, in spite of reporting the medications improved her condition. Tr. at 371, 373. At the hearing, she testified she ran out of the prescription and did not have the money to get it refilled. Tr. at 416. However, she reported to medical professionals at the time of the incident that she did not have a reason for stopping and had "alot [sic] of medication left in both bottles." Tr. at 371.

The ALJ identified other inconsistencies in Ms. Noel's testimony as well. Ms. Noel testified that she can only stand five-ten minutes and sit for two hours in an eight-hour day. Tr. at 416. However, she also stated she does not lie down during the day, Tr. at 419, she is able to

PAGE 11 - OPINION & ORDER

do general housekeeping and cooking, take hour-long walks, go shopping, take public

transportation, and attend college classes.  Tr. at 421-23.  She also testified she could work as a

caregiver, but that she has not looked for these positions because she is "not interested."  Tr. at

424.  These reasons, in addition to the lesser extent of symptoms established by the objective

medical evidence are sufficient justification for giving limited weight to Ms. Noel's testimony.

C.)    Jobs Identified at Step Five

As discussed above, the VE testified that a person with Ms. Noel's RFC could work as a

small component's assembler and a parking lot cashier, and the ALJ accepted this testimony.

Ms. Noel argues it was error to identify the parking lot cashier job because it is classified as light

work and she is limited to sedentary jobs.  The primary difference between sedentary and light

work is the lifting requirement.  Sedentary work is limited to "lifting no more than 10 pounds at a

time," 20 C.F.R. § 416.967(a), while light work allows "lifting no more than 20 pounds at a time

with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b).

There is also a less specific distinction between walking/standing limitations with sedentary work

only involving a "certain amount of walking and standing" as required to perform the job, and

light work allowing "a good deal of walking or standing."  20 C.F.R. § 416.967(a)-(b).

Here, the Disability Determination Service [DDS] consultant, Dr. Pritchard, concluded

Ms. Noel is limited to sedentary work based on her standing and walking limitations.  Tr. at 225-

27.  He also found she is limited to the sedentary range of lifting.  The ALJ accepted

Dr. Pritchard's conclusions in relation to standing, but found Ms. Noel could lift more than 10

pounds based on her own testimony.  Tr. at 29.  The ALJ stated:

> This [RFC] assessment is consistent with the opinion of [DDS] medical
> consultants. (citations omitted).  However, while DDS medical consultants
> reported [Ms. Noel] retained the ability to lift 10 pounds at most, I have credited
> [Ms. Noel's] testimony that she is able to lift up to 10 pounds frequently and up to
> 25 pounds occasionally.

*Id.*  Setting the lifting issue aside, I find the ALJ erred in finding Ms. Noel can perform jobs

above the sedentary level.  Dr. Pritchard relied on Ms. Noel's treating physician's conclusion that

PAGE 12 - OPINION & ORDER

she can only perform sedentary work due to her standing/walking limitations in making his own finding that she is limited to this exertion level. Tr. at 227. The ALJ did not reject this underlying evidence or Dr. Pritchard's conclusion as to walking/standing. *See* Tr. at 29. At the hearing, the VE testified the standing requirement for the parking lot cashier job "is certainly above the limits of sedentary." Tr. at 437. Thus, it was error for the ALJ to find Ms. Noel can perform light work.

In spite of this error, I find the ALJ's ultimate conclusion of non-disability at step five is supported by substantial evidence in the record. *Stout*, 454 F.3d at 1054. The other job identified, small components assembler, is a sedentary position. As discussed above, taking into account the VE's 25% reduction in the number of jobs meeting all of Ms. Noel's limitations, there remains 9,750 local / 900,000 national small parts assembly jobs that she could perform. Thus, even removing all of the parking lot cashier jobs, this remains a substantial number of jobs in the national economy, meeting the Commissioner's burden at step five. *Barker*, 882 F.2d at 1478-79; *Martinez*, 807 F.2d at 775.

## CONCLUSION

To the extent the ALJ erred in this case, I find it was harmless, and I AFFIRM the Commissioner's decision.

IT IS SO ORDERED.


DATED this __23rd__ day of April, 2007.


                                        /s/ Michael W. Mosman
                                        MICHAEL W. MOSMAN
                                        U.S. District Judge